```
                     United States District Court
                       District of Massachusetts
_____
                                    )
ALAN BROWN,                         )
          Plaintiff,                )
                                    )
          v.                        )
                                    )
ANTONIO BUSSONE, ALLESANDRO         )
VERRINI, LIVE LOBSTER CO., INC.,    )
F/V DUCHESS II, INC., DECAPOD,      )
INC., PERISHABLE PACKAGING,         )   Civil Action No.
INC., CHARTER SEAFOOD, INC.,        )   10-11059-NMG
ABABAV, INC., 3156334 NOVA          )
SCOTIA LIMITED (aka CAPE BRETON     )
LIVE LOBSTER CO.), KENNEBUNK        )
LOBSTER CO. LLC, BAIT MAN CO.       )
LLC, STONINGTON REAL ESTATE LLC,    )
ATLANTIC LOBSTER CO. LLC, BOSTON    )
LOBSTER CO. LLC, KNOX LOBSTER       )
CO. LLC, NEW ENGLAND LOBSTER CO.    )
LLC, PHIPPSBURG LOBSTER CO. LLC,    )
ROCKLAND LOBSTER CO. LLC and        )
LOBSTER WEB CO. LLC,                )
          Defendants.               )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

  Plaintiff Alan Brown ("Brown") brings suit against defendants Antonio Bussone ("Bussone") and Allesandro Verrini ("Verrini"), Live Lobster Co., Inc. ("Live Lobster") and various other corporate entities (together, "the Corporate Defendants") for various counts of 1) breach of contract and related claims, 2) breach of fiduciary duty, 3) violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and 4) for

-1-

certain equitable remedies. Before the Court is Live Lobster's emergency motion for clarification or modification of the August 2, 2010 Order of this Court.

I.   **Factual Background**

This dispute arises out of the fallout from the former business relationship between Brown and the Defendants. Bussone founded Live Lobster in 2001 as a wholesale vendor of live lobsters, lobster meat and other lobster products. Verrini is a seafood importer in Italy who, at about the time Live Lobster was founded, invested capital in the company. Since that time, he has been a part owner without active engagement in day-to-day management.

In the fall of 2003, Bussone hired Brown to be the General Manager of Live Lobsters. Brown alleges that he brought operations experience to the company that had previously been lacking. The venture experienced considerable growth after Brown was hired. Annual sales increased from just under $20 million in 2004 to almost $50 million by 2008. Moreover, Brown alleges that, after Bussone had "botched" the relationship with the venture's previous lender, he fixed the problem by creating a strong relationship with TD Bank which became the companies' primary lender. Security for loans from TD Bank apparently included personal guaranties of over $6 million from Bussone and Brown.

Despite the venture's apparent success, Brown was fired in September, 2009.  Brown claims that he was terminated without cause in violation of this employment agreement and that he has been unlawfully frozen out of the companies which he had a substantial hand in building.

II. **Procedural History**

Brown filed his complaint on June 22, 2010 and filed a motion for a preliminary injunction eight days later.  After a Local Rule 7.1 conference, Brown voluntarily agreed to dismiss his Chapter 93A claim and filed an amended complaint.  On August 2, 2010, by stipulation of the parties, the Court entered an Order ("the August, 2010 Order") which essentially prohibits the Defendants from 1) purchasing stock or other assets of any entity without notice to Brown, 2) attempting to increase Live Lobster's line of credit from TD Bank or obtaining credit by further encumbering any existing assets of the Corporate Defendants, 3) destroying records or documents relating to the case and 4) refusing to provide the plaintiff with reasonable access to unprivileged information relating to Live Lobster's finances. The August, 2010 Order was intended to protect Brown during the course of the litigation because he remains personally liable for the Corporate Defendants' debts but is not employed by Live Lobster nor is he a participant in the current operation of the business.

On November 3, 2010, Live Lobster Co., Inc. filed an emergency motion for clarification or modification of the August, 2010 Order with respect to a pending financing arrangement with TD Bank for the purchase of a new property. On November 15, 2010, the Court heard oral argument on the emergency motion for clarification. The Court directed Live Lobster to file a supplemental brief in support of its motion and to provide to the plaintiff a copy of its proposed financing agreement with TD Bank on or before November 17, 2010. The Court allowed Brown until November 19, 2010, to file a response.

### III. Emergency Motion for Clarification or Modification of the August, 2010 Order

Since the August, 2010 Order was issued, Live Lobster has entered into a tentative agreement to acquire a large parcel of property in Prospect Harbor, Maine ("the Property"). Live Lobster has negotiated a $750,000 loan from TD Bank to purchase the Property ("the Proposed Financing"). The Proposed Financing is to be secured by a promissory note and a new "all asset" security agreement with TD Bank. TD Bank will not finalize the Proposed Financing until either Brown agrees to it or the Court makes the requested clarification.

Before filing the motion for clarification, Live Lobster asked Brown to file a joint motion asking the Court to issue a "comfort order" declaring that the Proposed Financing would not breach the August, 2010 Order. Brown declined to do so and,

instead, claims that the Proposed Financing violates the August, 2010 Order.

Live Lobster requests that the Court clarify that, under the August, 2010 Order, Live Lobster is permitted to obtain financing from TD Bank to acquire the Property, provided that the financing does not 1) increase Brown's exposure on his personal guarantee or 2) use existing assets to secure the loan. In addition, Live Lobster seeks clarification that signing a new "all asset" security agreement to replace an existing one does not constitute further encumbering of Live Lobster's existing assets. In the alternative, if the Court finds that the August, 2010 Order in fact prevents such action, Live Lobster requests that the Court modify it. Live Lobster seeks emergency relief because the closing date on the Property is scheduled for November 30, 2010. Brown opposed the motion in writing.

### A.   Legal Standard

As part of its responsibility to administer the injunction, the Court may clarify or limit the injunction's language. Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 395 (1997). The Court may modify or dissolve an injunction where there has been "a significant change in the law or facts so as to make modification equitable." Civic Ass'n of Deaf of N.Y. City, Inc. v. Guilani, 970 F. Supp. 352, 358 (S.D.N.Y. 1997).

**B.   Application**

Live Lobster claims that the August, 2010 Order does not prohibit the Proposed Financing because 1) it will not increase Brown's existing personal guarantee and 2) it does not further encumber any of Live Lobster's existing assets.

The primary source of contention is the new "all asset" security agreement which TD Bank will require as part of the Proposed Financing.  Brown maintains that, by signing a new "all asset" security agreement, Live Lobster would violate the August, 2010 Order because that Order does not permit assets owned by Live Lobster as of August 2, 2010, to be used as collateral for a new debt.  The Defendants respond that the proposed new "all asset" security agreement with TD Bank would not alter the status quo because, even without it, the Proposed Financing would be secured by the existing "all asset" security agreement.

At the Court's request, after oral argument, the Defendants submitted a copy of the original "all asset" Security Agreement between Live Lobster and TD Bank, dated June 26, 2008 ("the Original Security Agreement") and the proposed First Amendment to the Security Agreement ("the First Amendment") which is the subject of the pending motion for clarification.  The First Amendment provides that the Original Security Agreement shall also secure the $750,000 Note that Live Lobster seeks to

negotiate in connection with the purchase of the Property.[1]  The Defendants claim that the First Amendment makes no changes to the Original Security Agreement.

The "Obligations" that are secured by the Original Security Agreement include:

> All obligations of the Debtor to the Secured Party of every kind and description, whether direct or indirect, absolute or contingent, primary or secondary, joint or several, due or to become due, or <u>now existing or hereafter arising or acquired</u> and whether by way of loan, discount, letter of credit, lease, or otherwise, including but not limited to the Promissory Note, Loan Agreement and Financing Documents.

Original Security Agreement, § 1 (emphasis added).  Additionally, the "Cross Collateralization" clause provides that

> In addition to being pledged as security for this loan, the collateral secured by this Security Agreement shall serve as security <u>for any other loan now or hereafter existing between Lender and Pledgor or Guarantor</u>.

Original Security Agreement, § 13 (emphasis added).

Thus, the language of the Original Security Agreement is clear that the assets it describes provide collateral for any loan that TD Bank extends to Live Lobster, including loans made after June 26, 2008.  The Court concludes that the Defendants are, therefore, correct that the Original Security Agreement would cover the Proposed Financing even without the First

---

[1] Brown notes that the real estate appraisal provided by the Defendants values the Property at $5 million thus rendering the First Amendment superfluous.

Amendment.

Nonetheless, the Court finds that the Proposed Financing violates the August, 2010 Order which provides that

> [Defendants] [s]hall not seek to increase the total amount of credit available to the Corporate Defendants from their lender, TD Bank. . . . Defendants shall not attempt to obtain credit (other than the above-referenced TD Bank line of credit) by transferring, encumbering or pledging any assets of the Corporate Defendants but this does not prevent the defendants from transferring, pledging or encumbering an asset obtained or purchased after the date of this order. Moreover, nothing herein shall preclude Defendants from executing a promissory note or otherwise agreeing to repay a loan secured by assets acquired after the date of this order.

August 2, 2010 Order, § A.2. The August, 2010 Order does not prohibit Live Lobster from acquiring new assets or from negotiating a new loan but it does prohibit Live Lobster from pledging or encumbering existing assets, i.e., using them as collateral to purchase a new property. As a result, the Proposed Financing would violate the August, 2010 Order because its security provisions would apply to existing assets as well as to the new Property.

If Live Lobster were to execute the Proposed Financing and then default on the debt, TD Bank would have the right to foreclose on Live Lobster's existing assets, including those guaranteed by Brown.[2] Thus, encumbering existing assets with a

---

[2] Brown maintains that default is a real possibility here because Live Lobster's Maine operations "are in chaos", as evidenced by the fact that a senior employee in Maine resigned

new obligation increases the risk to Brown with respect to his claims in this lawsuit.

The Court also notes that the Property is not included in the collateral securing Live Lobster's debt to TD Bank under the Original Security Agreement nor would it be under the First Amendment.  Neither grants TD Bank a security interest in Live Lobster's real property.  Instead, the Original Security Agreement secures Live Lobster's "Obligations" with its accounts, chattel paper, electronic chattel paper, equipment, inventory, deposit accounts, letter of credit rights, general intangibles, investment property and supporting obligations.  Original Security Agreement, § 2.

The Defendants contend that the Proposed Financing is consistent with the parties' negotiations with respect to the August, 2010 Order.  In those negotiations, the Defendants were insistent that the August, 2010 Order's language should not prevent them from acquiring new assets or arranging for a new loan.  After reviewing the correspondence submitted by the Defendants, the Court is satisfied that Brown did not agree that any new loan would become subject to the Original Security Agreement.

The Defendants also maintain that Brown is opposing the loan in bad faith to the detriment of the company.  Because the Court

---

because he believed that Bussone was engaging in illegal conduct.

agrees with Brown's reasoning, it finds that his opposition was not raised in bad faith. Finally, the Defendants assert that, if interpreted as Brown would have it, the August, 2010 Order forecloses Live Lobster from negotiating any loans. That does not appear to be the case. The Original Security Agreement is applicable only to loans from TD Bank. Thus, the Defendants are free to obtain financing from another source and to use the Property as collateral for such a loan.

The Court will, therefore, deny the Defendants' motion to clarify and, because the Court finds that there has not been "a significant change in the law or facts so as to make modification equitable", it will deny the motion to modify as well. See Guilani, 970 F. Supp. at 358.

## ORDER

In accordance with the foregoing, the Defendants' emergency motion to clarify or modify the Court's August 2, 2010 Order (Docket No. 80) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 23, 2010